## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **MICHELLE STONE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. CIV-23-84-SM** |
| ) | |
| **KILOLO KIJAKAZI,** ) | |
| **Acting Commissioner of** ) | |
| **Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Michelle Stone (Plaintiff) seeks judicial review of the Commissioner of Social Security's final decision that she was not "disabled" under the Social Security Act. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). The parties have consented to the undersigned for proceedings consistent with 28 U.S.C. § 636(c). *See* Docs. 8, 9.

Plaintiff asks this Court to reverse the Commissioner's decision and to remand the case for further proceedings because the Administrative Law Judge's (ALJ) step-five findings lack substantial evidentiary support and because the ALJ's Paragraph B findings "corrupted the remainder of the decision." Doc. 10, at 3-14. After a careful review of the administrative record

(AR), the parties' briefs, and the relevant authority, the Court affirms the Commissioner's decision. *See* 42 U.S.C. § 405(g).[1]

## I. Administrative determination.

### A. Disability standard.

The Social Security Act defines a disabled individual as a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B. Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in h[er] prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the

---

[1]     Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the AR will refer to its original pagination.

Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

**C.   Relevant findings.**

**1.   ALJ's findings.**

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 850-84; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ found Plaintiff:

(1)   had not engaged in substantial gainful activity since February 1, 2017, the amended alleged onset date;

(2)   had the severe medically determinable impairments of closed fracture of the coccyx, coccygodynia, mild lumbar disc disease, obesity, and depression;

(3)   had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(4)   had the residential functional capacity[2] (RFC) to perform sedentary work except the claimant can understand, remember, and carry out simple instructions; can make simple work-related decisions, and must stand one to two minutes, every 30 minutes, while remaining at the workstation;

(5)   was unable to perform her past relevant work;

---

[2]   Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1345(a)(1), 416.945(a)(1).

(6)     could perform jobs that exist in significant numbers in the national economy such as touch-up screener, semi-conductor bonder, semi-conductor loader; and so,

(7)     had not been under a disability from February 1, 2017 through September 27, 2022.

*See* AR 850-84.

> **2.    The ALJ's decision is the final decision of the Commissioner after remand.**

This Court previously remanded this case for further consideration. AR 919-27. Plaintiff did not file "exceptions to the [ALJ's] decision" and the Appeals Council did not "assume jurisdiction without exceptions being filed." 20 C.F.R. §§ 404.984, 416.1484 So, the ALJ's decision is "the final decision of the Commissioner after remand." *Id.* §§ 404.984(d), 416.1484(d).

## II.    Judicial review of the Commissioner's final decision.

### A.    Review standard.

The Court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

4

(internal quotation marks omitted)). A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052.

This Court "consider[s] whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but we will not reweigh the evidence or substitute our judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks omitted). Thus, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.*

"[T]he failure to apply proper legal standards may, under the appropriate circumstances, be sufficient grounds for reversal independent of the substantial evidence analysis." *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). But the failure to apply the proper legal standard requires reversal only where the error was harmful. *Cf. Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (placing the burden to show harmful error on the party challenging an agency's determination).

### 1.   Substantial evidence supports the ALJ's step five decision and RFC assessment.

Plaintiff argues that the jobs the ALJ identified she could perform at step five are incompatible with her RFC assessment. As a result, the RFC

assessment lacks substantial evidentiary support. Doc. 10. at 4. Plaintiff asserts that the vocational expert's (VE) suggested occupations with a reasoning level 2–requiring her to apply commonsense understanding to carry out *detailed* but uninvolved written or oral instructions– are incompatible with an RFC limiting her to understanding, remembering, and carrying out *simple instructions. Id*. at 4-7. Plaintiff argues that her RFC is only compatible with jobs that require a reasoning level 1, which is defined as the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions [and to] [d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Id.* at 5. Plaintiff cites no case law to support this argument. By contrast, the Commissioner cites caselaw holding there is no inherent conflict between Plaintiff's RFC and jobs with reasoning level 2. Doc. 14, at 7-8.

This Court has "repeatedly rejected Plaintiff's argument and found that a limitation to understanding, remembering, and carrying out simple instructions does not create an apparent conflict with occupations requiring GED [r]easoning [l]evel 2. *Robertson v. Kijakazi,* No. CIV-21-1183-AMG, 2023 WL 1871110, at *3 (W.D. Okla. 2023) (citing *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) and *Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008)); *see Ray v. Comm'r of Soc. Sec.*, No. CIV-18-638-SM, 2019 WL

1474007, at *5 (W.D. Okla. Apr. 3, 2019) ("The court finds that, on its face, the description for a reasoning level of 2—the ability to carry out detailed but uninvolved written or oral instructions—does not conflict with Plaintiff's RFC limitation to carrying out simple work-related instructions and tasks." (internal quotation marks omitted)); *Roth v. Colvin*, No. CIV-16-2-D, 2017 WL 394676, at *9 (W.D. Okla. Jan. 11, 2017) (finding that an RFC allowing a plaintiff to perform jobs with "simple[,] repetitive, routine instructions and work decisions" was "consistent with reasoning level 2 which is required by the jobs identified at Step Five" (internal quotation marks omitted)), *adopted*, 2017 WL 395215 (W.D. Okla. Jan. 27, 2017); *Goleman v. Colvin*, No. CIV-15-972-HE, 2016 WL 3556958, at *4 (W.D. Okla. May 6, 2016) (concluding that where RFC limited the plaintiff to "understand, remember, and carryout simple, routine, repetitive instructions," "[t]he ALJ properly relied on the jobs identified by the VE with a reasoning level of two"), *adopted*, 2016 WL 3566688 (W.D. Okla. June 24, 2016).

Likewise, there is no conflict between Plaintiff's RFC and the jobs with reasoning level 2 identified by the VE. So, the ALJ did not have to ask the VE to identify any jobs with reasoning level 1. Furthermore, because "there was no conflict between the VE's testimony and information in the DOT," "the ALJ's mere failure to ask a perfunctory question the answer to which would

have been a simple 'no,' cannot be construed as anything other than harmless error." *Bratten v. Berryhill*, No. CIV-16-232-F, 2017 WL 876031, at *3 (W.D. Okla. Feb. 16, 2017) (citing *Poppa v. Astrue*, 569 F.3d 1167, 1173 (10th Cir. 2009) (where no conflicts exist between VE testimony and DOT, the ALJ's failure to inquire as to potential conflicts is harmless error)), *adopted*, 2017 WL 876309 (W.D. Okla. Mar. 3, 2017).

### 2. Substantial evidence supports the ALJ's RFC assessment of Plaintiff's mental limitations.

Plaintiff next argues "[t]he ALJ mischaracterized the evidence in her Paragraph B findings[,] which corrupted the remainder of the decision." Doc. 10, at 7. The ALJ found Plaintiff has a moderate limitation in understanding, remembering, or applying information. AR 857. She also concluded Plaintiff had intact short-term memory function. *Id.* Plaintiff generally argues the ALJ erred in finding no more than moderate limitations at step 2, mischaracterized Plaintiff's daily activities, disregarded the consultative examiner's "persuasive" opinion that Plaintiff had "'difficulty with short-term memory and concentration skills,'" erred in other Paragraph B findings, and relied on stale records in formulating the RFC. Doc. 10, at 9-13.

But the Court agrees with the Commissioner that the Paragraph B findings and step-four findings are two separate inquires. At step two, the ALJ rates the degree of limitation resulting from all medically determinable mental

impairments in four broad functional areas, including, as relevant here, understanding, remembering, or applying information. *Wells v. Colvin*, 727 F.3d 1061, 1068 (10th Cir. 2013) (quoting 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3)). Ratings that fall short of specified levels dictate a finding of "not severe." *Id.* (quoting 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1)). But "[a] conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five." *Id.* at 1068-69. "In h[er] RFC assessment, the ALJ must consider the combined effect of *all* medically determinable impairments, whether severe or not." *Id.* at 1069 (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)). The criteria used at steps two and three of the analysis to evaluate mental impairments are "not an RFC assessment," and "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review Technique Form]." SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996).

In *Suttles v. Colvin*, 543 F. App'x 824, 826 (10th Cir. 2013), the plaintiff argued the ALJ had "improperly disregarded his mental impairment at step

four after finding it non-severe at step two." The court disagreed noting that the ALJ, after properly "recogniz[ing] that a distinct mental RFC assessment was still required at step four," had "discussed evidence related to depression and then pointedly omitted any limitation associated with that mental impairment." *Id*. Evaluating the ALJ's statement, which suggested no "conflation of the step-two and step-four assessments," the court held "that the ALJ [had] conducted a mental RFC assessment separate from the non-severity determination made at step two." *Id*.

Here, as in *Suttles*, the ALJ explicitly acknowledged the proper legal standard, AR 860, and she considered Plaintiff's mental impairments. *Id*. at 856-60, 868-70, 871-75, 878-81. She also included limitations to simple instructions and simple work-related decisions in the RFC assessment. *Id*. at 882.

The ALJ looked to Plaintiff's function report, which showed Plaintiff could dress, bathe, groom, shave, feed, and toilet. *Id*. at 857 (citing *id*. at 251-58). The ALJ considered the agency doctors' opinions:

> Laura Swisher, Ph.D., and Julia Wood, Ph.D., found the claimant to have *a moderate limitation in her ability to understand, remember or apply information*; a moderate limitation in her ability to concentrate, persist, or maintain pace; and, a mild limitation in her ability to adapt or manage herself. At the initial level of consideration, Dr. Wood found the claimant to have a mild limitation in her ability to interact with others, while at the

10

reconsideration level, Dr. Swisher found the claimant to have a moderate limitation. Further, at the initial level of consideration, Dr. Wood found the claimant to be able to perform simple repetitive tasks; able to maintain appropriate attention in a work setting; able to maintain superficial relationships with coworkers and supervisors; and, able to work with the general public. At the reconsideration level of consideration, Dr. Swisher found the claimant to be able to perform simple repetitive tasks; able to maintain appropriate attention in a work setting; able to maintain superficial relationships with others; and, able to adapt to a work setting. *Overall, the opinions of Dr. Swisher and Dr. Wood are largely consistent with the medical treatment record, the claimant's activities of daily living, the opinions and observations of Dr. Smiley, and with one another. Further, they are largely supported by the objective medical treatment record, particularly with the objective findings of Dr. Smiley and the mental status examinations throughout the record. Accordingly, although the precise assessed mental limitations differ from those assessed by the undersigned, the undersigned finds the opinions of Dr. Wood and Dr. Swisher to be partially persuasive, inasmuch as they are consistent with the decisional rationale and residual functional capacity assessment contained herein.*

*Id.* at 879 (emphasis added).

Consultative examiner Dr. Rachel Smiley recognized Plaintiff's "difficulty with short term memory and concentration." *Id.* at 868 (citing *id.* at 686-88). And she also noted that Plaintiff "was thought to be able to maintain full time employment, and that doing so would likely improve her mood." *Id.* Dr. Smiley diagnosed her with adjustment disorder with depressed mood, rule out other specified depressive disorder. *Id.* The ALJ found Dr. Smiley's opinion persuasive. *Id.* at 880-81.

11

Plaintiff also challenges the ALJ's finding of intact short-term memory and maintains this conclusion clashes with Dr. Smiley's persuasive opinion otherwise. Doc. 10, at 11-12. The ALJ noted other instances in which Plaintiff had adequate memory. AR 869 (citing three separate March 2019 assessments), 870 (June 2019 assessment), 873 (July 13, 2020) 875 (July 8, 2021). She also noted a December 5, 2019 assessment of impaired memory. *Id.* at 872. The ALJ noted Plaintiff's frequent reports of satisfaction with her mental health treatment, and that her mental health "is remarked to be managed and stable with medication adherence." *Id.* at 878. She has had no psychiatric hospitalizations or emergency room visits. *Id.*

As much as Plaintiff relies on PA-C Carrie McGuire's mental health assessment of cognitive difficulties and a moderate intellectual delay, the ALJ gave good reason to find it not persuasive:

> The assessed mental limitations are, likewise, wholly without basis within the medical treatment record, and PA-C McGuire does not prescribe or treat the claimant for such impairments. Furthermore, her indicating that the claimant was wholly unable to work due to her debilitating pain invades the province of a matter reserved for the Commissioner.

*Id.* at 880.

Plaintiff next challenges the ALJ's findings of only a mild limitation in the ability to adapt or manage oneself. Doc.10, at 12. For support, she points

to her reported difficulties in "basic hygiene" and other activities. *Id.* (citing AR 251-52). The ALJ considered the state agency physicians' opinions in finding a mild limitation, and substantial evidence supports this conclusion. AR 879.

Plaintiff then challenges the ALJ's reliance on these "stale" and incomplete state agency opinions, noting they only considered evidence from 2017 to 2018, predating Plaintiff's 2021 remand, and that the medical record goes through 2022. Doc. 10, at 12-13.

The ALJ's consideration of all the opinion evidence followed a thorough recitation of the medical evidence, including Plaintiff's treatment from 2019 to 2022. AR 869-76 (consideration of records from 2019-2022). The ALJ reviewed *all* the medical evidence in formulating an RFC that addressed Plaintiff's mental impairments. AR 860. Just because her assessment partially tracked the medical opinions of the state agency physicians does not mean she "based [it] solely on stale evidence. Substantial evidence supports the ALJ's decision." *Kearns v. Colvin*, 633 F. App'x 678, 683 (10th Cir. 2015).

### 3. The ALJ properly considered Plaintiff's obesity under SSR 19-2.

Without raising a separate argument, Plaintiff states the ALJ gave only "passing mention" to her obesity, that it "should be more fully discussed and analyzed," that the ALJ used only "boilerplate without reference to the

13

[medical evidence of record]," and that the ALJ should have considered postural limitations in the RFC assessment. Doc. 10, at 13-14.

An ALJ "must consider the limiting effects of obesity when assessing a person's RFC" and "explain how [she] reached [her] conclusion on whether obesity causes any limitations." SSR 19-2p, 2019 WL 2374244, at *4 (May 20, 2019). But "[o]besity in combination with another impairment(s) may or may not increase the severity or functional limitations of the other impairments." *Id.* at *2. An ALJ does "not make general assumptions about the severity of functional effects of obesity combined with another impairment(s)," but "evaluate[s] each case based on the information in the case record." *Id.* at *4.

Here, at step three, the ALJ stated that in consideration of SSR 19-2:

> The record makes mention of claimant's BMI of 73.32. This places her above the threshold level for obesity as defined by the medical community. Regarding claimant's obesity, an individual may have limitations in any of the exertional functions, postural functions, in the ability to manipulate objects, or to tolerate extreme heat, humidity, or hazards because of obesity. In particular, however, the claimant's obesity is not of such a level that it results in an inability to ambulate. She does not require any assistive devices. There is no report of shortness of breath, cardiovascular or musculoskeletal body system complications caused by obesity. *The record does not establish that her obesity has increased in severity or coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing.* Nevertheless, the effects of the claimant's obesity have been fully considered in determining

14

> a residual functional capacity for the claimant and in
> whether the claimant's condition meets or equals a listing.

AR 854 (emphasis added).

Then at step four, the ALJ concluded:

> More specifically, the undersigned has considered the
> claimant's musculoskeletal issues, as well as residual
> symptoms related to her obesity, when taking into account
> the claimant's residual functional capacity and has
> restricted her to the sedentary exertional range, limiting the
> amount of exertion or weight lifted or carried due to the
> medical evidence of record. Further limitations were also
> afforded to the claimant limiting providing her with the
> ability to stand every 30 minutes for one to two minutes at
> one time, while remaining at her workstation.

AR 882. The ALJ considered the medical evidence of record when evaluating

the impact of Plaintiff's obesity.

Based on the ALJ's discussion of Plaintiff's obesity at steps three and

four, the Court finds that the ALJ fulfilled her duty in considering obesity

under SSR 19-2. The ALJ considered the obesity, singly, and combined with

other impairments and ultimately concluded that it caused no limitations in

excess of the RFC. The Court finds no merit to Plaintiff's passing challenge to

the ALJ's consideration of obesity.

### III.   Conclusion.

Based on the above, the Court affirms the Commissioner's decision.

**ENTERED** this 8th day of August, 2023.


SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE